2011-12-37 Mr. Thompson Good morning, your honors. This appeal involves the Commerce Department's choice of surrogate value sources to calculate normal value for purposes of determining the anti-dumping margins applicable to Chinese pencil exports. The case arises from the Commerce Department's 2006-2007 administrative review of the anti-dumping duty order. The Court of International Trade rejected Commerce's surrogate valuation choices for two factors of production, wooden slats and writing cores, and the domestic industry has appealed the decision on those two points. We believe that the Court of International Trade disregarded the substantial evidence standard. Why isn't this like Tang Meng, where the Court of International Trade remanded to Commerce and Commerce, in its most recent decision, said, you're right, this is the preferred way of doing it, both for the slats and for the core, and therefore, instead of challenging the remand decision, you should be challenging Commerce's recent decision. And the question is whether Commerce's recent decision is supported by substantial evidence. Well, your honor, we don't believe that this case involves Commerce acknowledging that the Court of International Trade was correct. Well, there's quite a bit of language in there where they seem to say that this is the preferred way of doing it, that looking to the slat data is consistent with the Department's preference, that the core data that they now use constitutes the best available information. I mean, it doesn't read as though Commerce thought that it was simply giving in to the Court of International Trade. The decision reads as though they think this is the right thing to do. Well, the Court of International Trade told Commerce that it cannot rely upon the information that was presented and that it relied upon in the original determination. So Commerce's decision, when it talks about the best available information, that is based on a truncated record. Commerce was told you cannot look at the underlying data that you first applied. You must look at... Despite our previously indicated concerns about the paper and stationary core data, the core values are publicly available, sufficiently contemporaneous, input-specific, and not aberrational. They seem to have changed their minds about the utility of this data. Because there was no competing data for them to take into consideration. So that was, in effect, the only game in town. The record was closed. The Court had said, don't look at the information that you previously relied upon. So Commerce had to go back and make a determination, basically, on that one set of data that it had previously rejected. So you're saying that Commerce didn't change its mind, but was just acting under instructions. That is our view. Yes, Your Honor. Commerce certainly had no choice than to address that information that remained after the Court had said that the original information was inappropriate. Well, and the case was on appeal. Commerce admitted they'd made a mistake in the original decision, right? Commerce never admitted that there was a mistake. Sure. They said that their reasoning was incorrect, and that's noted in the Court of International Trade decision. In which regard, Your Honor? I'm not certain. I thought with respect to the slack that they indicated that there was a problem with their original decision, and that it had said something which wasn't correct. Oh, I think what you're referring to there, Your Honor, is a reference in Commerce's determination that in the original anti-dumping investigation, the choice had been between basswood lumber and slats of a different type of wood. In fact, in the original investigation, the choice was between basswood lumber and a basket category of different types of lumber. Commerce did have an erroneous statement in the final results, which the Court pointed out. However, our view is that this misstatement by Commerce is completely beside the point, because the Department has the discretion, regardless of the fact that different information may have been presented to it in the review than in the original investigation. The Court of International Trade, affirmed by this Court, had said Commerce has discretion to look to basswood lumber pricing. Okay, I don't mean to take up all your time on the tongue bone issue, but so you can proceed to the rest of it. We're not listening to an appeal that's already been heard. I mean, the use of the American basswood lumber prices in the first review is already settled. That's not at issue. That is at issue, Your Honor. Okay, well explain why. Well, because the determination on appeal is the Court of International Trade's conclusion that Commerce Department committed error in its original determination by using the basswood lumber instead of the Indian stationary data. So the only opportunity we have to challenge that decision, that was an interim decision that we could not appeal directly to the Court. Our only opportunity is to challenge it through this appeal. But you agreed that if Commerce on the remand had said, well, we've thought about the Court of International Trade was right, our first decision was wrong, and now we're going to follow the Court of International Trade decision because we think that's the right way to do it, and that's the way we should have done it in the first place. No, I disagree. If they'd said that, you wouldn't have a case, right? Oh, I disagree that we wouldn't have a case. Because first, as I said before, the record on remand was different than the record in the original review. But they're entitled to change their policy, and if they change their policy and say, well, quite apart from whatever compulsion there was in the Court of International Trade decision, we still think this is the right thing to do, and that's what we're going to do, then the challenge, the original decision is moot. You have to challenge the most recent Commerce decision where it said, this is our decision, and we don't care what the Court of International Trade said. Well, Your Honor, if we were to challenge the most recent decision, we wouldn't have, what would we challenge it on? That they chose the only... It was lacking substantial evidence or whatever. But the only evidence after the Court had taken out the Basswood lumber data was what was before Commerce at that point. That's not really a ground for a challenge. See, what we are challenging is the original decision by the Court. I understand your theory, but I don't understand your answer to my hypothetical. If Commerce says, we don't care what the Court of International Trade said. We've looked at this again. We think we were wrong the first time. We've changed our minds. We think that, in fact, we should use the slat data and this core data from the paper and pencil publication. We think that's the right way to do it, and we're doing this not under compulsion, but because we think it's the right thing to do. You wouldn't have a case. Well, why would Commerce be doing that except for what we believe is the error in the original reason? They've changed their minds. The answer to the hypothetical is yes, you lose. But it's a different scenario. But you're saying it's a different fact. Yes. Commerce did not... Now, are we reviewing the Court of International Trade's decision, or are we looking through it to determine substantial evidence in the Commerce Department's decision? It's the latter, Your Honor. You take the Court of International Trade's discussion into account, but the issue on appeal is whether the original Commerce determination was supported by substantial evidence and otherwise in accordance with law. And so this, of course, is the first opportunity that we've had. And that's because in that review, that decision was final and reviews were set according to that decision. Yes. You had no opportunity to appeal that until now. Yes, Your Honor. Okay, so this first argument applies only to the first review. Well, to the administrative review, yes. The one that led to the initial challenge determination and the first Court of International Trade remand order. Why would you argue that the basket category that was used, or that was also available, was an improper basis as opposed to use of the American Basswood Lumber Crisis? Well, there wasn't a basket category. Do you mean in terms of import statistics? Yes. Well, there wasn't a basket category for lumber prices at issue. The choices were between a publication that sets out American Basswood Lumber Crisis, which we supported, and a information derived from an interview in an Indian newspaper on slat prices in India, or what were reported to be slat prices. So as between the two, there really wasn't a basket category. The basket category arose with the second point under review, which was the pencil cores, where we took the position, and Commerce originally agreed, that the Indian import data covering pencil cores, that's the 960920 as a tariff provision, that that provided the best available information to value Chinese pencil cores. The court disagreed, and once again said the information set forth in the Indian stationary publication was preferable. So the basket category arose in our second area. If we look through the CIT's decision, and look through Commerce's decision, Commerce made two decisions there, didn't they? Why don't we look at Commerce's second decision for substantial evidence, even if it was motivated, shall we say, by the CIT's decision? Well, because, Your Honor, under, as I understand it, under the court's... You're saying it was under duress? Well, it was under duress. Any remand is, unless the agency takes a voluntary remand, which was not the case here. But under the court's jurisdictional structure, the only way to challenge an interlocutory determination of the Court of International Trade, short of taking an interlocutory appeal, which, as you know, is a very difficult task, is to await a final judgment of the lower court. Well, that's true, but we've said that if the second decision reflects Commerce's views rather than the compulsion, that we have to review the second decision, because that's Commerce's current policy. Well, but, Your Honor, I would disagree that that's Commerce's current policy, because... Well, I think there would be several indicia to determine whether it's Commerce's current position that they reached in a dispassionate manner. One would be, did they take a voluntary remand, or did they fight the case in the Court of International Trade, or whatever the lower court may be. The second would be, is this Commerce decision based on the same record... Well, they're not here fighting it. I mean, that is significant. I mean, it makes it seem as though they don't care that much. Well, they may not, but... They didn't fight it when it came up to the Court of International Trade after the remand, either, did they? Well, no, Your Honor, they simply presented the remand determination, but there was really nothing left to fight about there until we got to this court, the court having said, Commerce, don't take into account this other information. It would be one thing, and I see your earlier question now, it would be one thing if Commerce had, either by a voluntary remand or at the direction of the court, said, here we have the same information that was before us in the original review, and you know what? We've changed our minds. But they didn't. Here, the court basically directed them, and this is in the remand order, directed them to use only one set of information that was before them. So, in that sense, it may not be that both hands were tied, but at least one hand was tied behind Commerce's back, and that's a very different situation. Why don't you save the rest of your rebuttal time, most of which is gone, and you wanted to save some. Mr. Saylor. Thank you. Good morning, members of the panel. I think I am probably best suited just to sort of follow up on where you have left it with Mr. Thompson. I was interested by Judge Dyke's reference to Tung Mung and the fact that really what we ought to be looking at here is the second remand, and I think that Mr. Thompson has sort of spun a bit of a web here that doesn't quite accurately. What effect does the decision in the second remand have on the first? Well, let me explain how I believe the Commerce Department's reaction to the remand's termination ought to be viewed by the court. Number one, as Judge Dyke pointed out, they're not here. Maybe they don't care. Maybe they don't care because they specifically did what the court said to do right away. No ifs, ands, or buts about it. They did what the judge asked them to do. They did not do what you have, I'm sure, become familiar with them doing and what they did in Dorbest, for example, a case of some significance in the last year or so. Let me ask you again. What effect does the second decision make have on the first remand? I believe that it completely reverses the Commerce Department's position on the two issues involved, slats and cores. And the reason I say that is because, again, let me refer to Dorbest. In Dorbest, the Commerce Department got a remand and they were told something and they said no. And then they got another remand and they said no. They made their point known to the court that they disagreed with this and we're going to stick to our guns. It wasn't until the third time that they acquiesced and said effectively under protest, okay, we're doing this, but we'll see you at the Federal Circuit. So if we have to review only the second commerce decision, complying with the remand, rather than the first, then we and appellate never get a review of the first decision, which the CIT reversed. Isn't that right? Well, if we can't go back to the first decision... I disagree. That decision is on the record here and obviously it's a part of this whole... So what are we doing? Reviewing the CIT de novo? I mean, if we can't review the first commerce decision, we're reviewing the second commerce decision? I think that Judge Dyke was correct in saying that there is indeed an avenue and was an avenue for the petitioner to pursue the substantial evidence. The answer is that when the agency changes its mind, sometimes that moots an interim court decision that no longer has any significance and the agency has changed its mind. The question is whether in this case the agency has changed its mind because it was compelled to do so or whether it changed its mind just because it thought better of what it had done the first time. And while we don't have... well, we do have history to look at and we can talk about that too, but we have subsequent events. Mr. Thompson is going to say, hey, we didn't participate in the review the next year. I don't even recall whether or not in the subsequent year, the third... Let me follow up on Judge Dyke's question. So commerce changed its mind. Commerce changed its mind and has said so again and again in subsequent reviews. And I want to ask again, it changed its mind. It's new mindset. What effect does that have on the first review? I mean, did it go back and say, oh, gee, we changed our mind, so let's go all the way back to the first review and redo that case? Well, that's exactly what they did. They said, you know what, we should have used this flat value, we should have used these core values for completely different core inputs, and they calculated new margins. Not only for the two companies that were directly involved in the case, but for the third plaintiff... So I guess that answers Judge Dyke's question. We're sitting here and we're reviewing whether commerce was correct or not when it changed its mind. Yes. And quite frankly, I'm mystified and I'm compelled to refer to the lower court's reference to both the defendant and the defendant intervenors at the Court of International Trade position here as peculiar. Indeed, how can you say... And I'm going to have a lot of time here, so I might as well mention to the court that I asked Petitioner's Appellant's Counsel if I could use a visual display. I did not request the court in advance. The clerk's office told me that it was sort of not a problem, but before I do anything, I'd like to make certain that you don't take issue with my pulling out a very small visual device. Was it a record below? Pardon me? Was it a record below? Well, the dimensions of a flat were in the record below, and the Commerce Department went to verification and saw these things. They were handed these things. They don't formally make physical items a part of their record. We can do without it. Okay. Well, I mean, let's talk about what we're here about. We're here about whether or not the Commerce Department is accurately calculating the margin of these companies who produce pencils. And in producing pencils, they don't buy lumber, and they don't process lumber and convert it into a slat. They buy slats. The two competing values that the Commerce Department was presented with in the first review. In the first review, there were some respondents who did buy lumber. Okay. Judge Rain, I guess we need to clarify that because you have made reference to the first review. You mean the original investigation in 1994. In 1994, and the writing instrument case is clear in the decision, says China first produced slats. We were looking for a value for slats. Three Star and another company not involved any longer produced their own slats, so we need to find log values. Log values and lumber values were both an issue in that original case. And why did lumber become an issue? Because Commerce went off and used some basket category of many different kinds of woods. And we argued 20 years ago or 17 years ago, you know, if you're going to go off and use lumber to get down to this little piece of wood, then let's be a little more specific here. And we've got some basswood values from a US source that we located. We looked around the world. You can't find anything. Lindenwood is somewhat unique to China, I think parts of Europe and the US. So we didn't have a whole lot of choices. People don't trade in slats regularly. It's certainly not an item in any harmonized tariff schedule anywhere. So we were forced to say, if you're going to be looking at lumber, then let's at least try to be specific here. And that's where the whole lumber, basswood, Lindenwood thing came up 17 years ago. But now fast forward, it's 2008 and we're looking at 2006, 2007 review. Guess what? Unfortunately, it was after the preliminary determination in which the Commerce Department used the basswood values and did this goofy calculation that they do. They did use that in their preliminary. We, under the regs, parties have an additional 40 days then or 20 days to submit surrogate value data. We happened to locate in that time period the article that is on the record now. For the first time in 17 years, the Commerce Department had a value for a pencil slat. And all that the appellant can do with that is to try to foment trouble about the fact that it's not basswood and it's not Lindenwood. But for golly's sake, it's a pencil slat. It's what we use to produce our pencils. I was scratching my head when the Commerce Department issued their original determination. How, given the fact that they look first and foremost to product specificity in determining which factor of production is to be valued. How, if you've got a slat on one hand and a lumber on the other hand, are you supposed to come to the conclusion that we should take this value? And while we're at it, we're going to manipulate it and go through this hypothetical conversion process of which there's really no legitimate information on the record to support to come up with a piece of lumber that's been converted into a slat. It's comical. And the same thing can be said of cores. There's information on the record to demonstrate that the trade in cores, the kind of cores that are advertised, are commercial products. You walk into a stationary shop, you can buy a gross of pencils in a box or you can buy a gross of mechanical pencil leads or special kinds of leads for different purposes in small packages that are very expensive. That's on the record. Some of them show that three leads is as much as five dollars. At the retail level, I understand. But the point is, we're talking about pencil cores that are for one purpose only. You can't use them for any purpose except to stick them between two slats and slice them into pencils. Sounds like that's the core of your argument. Indeed. And quite frankly, I would welcome any questions from the court. The factor of production here was slats. They used lumber. They decided they were wrong. I think you've probably concluded your argument. I don't know that there's any more that I can say, but if the court has any other questions, I'd be pleased to answer them otherwise. Thank you very much. Thank you, Mr. Saylor. Mr. Thompson used most of his rebuttal time. We'll give you two minutes. Thank you, Your Honor. Going back to the point about whether this was a voluntary choice by Commerce, keep in mind that when Commerce did its remand determination, it was only looking at the paper and stationary information. The Court of International Trade had told Commerce, you cannot take into account the basswood lumber information that was on the previous record, and you cannot take into account the Indian import data for a course. So the court had constrained the information that Commerce could take into account. What about the fact that they used the same information in subsequent reviews when they weren't under a court order to do so? Well, Your Honor, in subsequent reviews, the domestic industry hasn't participated. So we have not presented the basswood data or the Indian import data in those reviews. So if you will, the only game in town for those reviews is the pen and stationary data. So presented with a different record, Commerce has reached a different conclusion. But that's a very different situation. They reached the same conclusion that they did here in the remand decision. In the remand decision after the court had told them. And they weren't under any compulsion to do that in the other cases, in later cases. No, Your Honor, but the record was completely different in those other cases, because the information that we presented in the challenge review was not before Commerce in those subsequent reviews. So it's a different factual scenario. They had no other choice than to rely on those data. The same as in the remand determination, when the Court of International Trade had said to Commerce, do not use that information. So in that respect, Commerce's evaluation wasn't one in which it went back and said, well, you know, on second thought, weighing the two, we're going to go the other way. It was one where the court had literally put a thumb on the scales, if you will, and said, only use this information. And that's very different than a scenario where the agency has gone back and reconsidered on the whole record. So with that, if you have any more questions, I'd be happy to address them. Otherwise, thank you very much. Thank you, Mr. Thompson. May I take five seconds? You do not have your appellee. You don't have the last word. Sorry.